**In the Matter of KENTILE FLOORS, INC., Debtor.**

**Kentile Floors, Inc., Plaintiff,**

v.

**Congoleum Corporation, Defendant.**

**No. 95 Civ. 2470(LLS).**

United States District Court, S.D. New York.

Dec. 16, 1998.

Pitney, Hardin, Kipp & Szuch, (Robert S. Burrick, Scott A. Zuber, Theodore B. Choi, of counsel), Florham Park, NJ, for Plaintiff.

Patterson, Belknap, Webb & Tyler (Thomas W. Pippert, William F. Cavanaugh, Jr., of counsel), New York, NY, for Defendant.

## Memorandum and Order

STANTON, District Judge.

The only claim remaining is for tortious interference with plaintiff Kentile Floors, Inc.'s prospective business relations with its dealers. Defendant Congoleum Corporation moves for summary judgment.

The affidavit of plaintiff's former president, Mason N. Carter, submitted in opposition to the motion, consists substantially of hearsay, which is incompetent under Fed. R.Civ.P. 56(e): "Supporting and opposing affidavits shall be made on personal knowledge . . . and shall show affirmatively that the affiant is competent to testify to the matters stated therein."

Taking the affidavit at face value, Kentile asserts that Congoleum 1) abused the knowledge of Kentile's distributors which Congoleum's president gained during an earlier proposed acquisition of Kentile, and 2) threatened Kentile's distributors with the loss of Congoleum's full line of tile and sheet floor coverings unless they stopped carrying Kentile's competing tiles.

*Misuse of Confidential Information*

Kentile alleges that ". . . Congoleum utilized confidential and proprietary information from the due diligence process, obtained under false pretenses of some form of business consolidation between the two companies, to launch its attack on Kentile." Pl.'s Mem. at 18.

Kentile states that, through the "due diligence" process, Congoleum learned of "the importance of Kentile's distributorship network providing a critical mass of sales volume in order for its business to remain viable." Carter Aff. ¶ 13. But that "knowledge" amounts to nothing: the same could be said of almost any manufacturing business.

Kentile may intend to imply that the proprietary information was the identities of the distributors. But Congoleum had independent knowledge of their identities, because they also carried Congoleum products. All the distributors allegedly targeted by Congoleum were already Congoleum distributors (Carter Aff. ¶ 14), and thus the product lines they carried were known to Congoleum.

From Kentile's own description, Congoleum's interference would only work with distributors who already carried Congoleum's products. As Kentile states, "Congoleum's tying scheme would only work on those distributors who already carried the sheet vinyl line, since they were highly dependent on defendant as a supplier. Indeed, this was precisely defendant's leverage over them, so the fact that they were already Congoleum distributors was an integral part of Congoleum's plan." Pl.'s Mem. at 27.

Under either interpretation, there is no showing of misuse of proprietary information.

*Interference with Prospective Business Relations*

Kentile argues that Congoleum threatened to pull its sheet vinyl line from distributors unless they also carried Congoleum's Amtico tiles instead of Kentile's, which Kentile claims constitutes tortious interference with prospective business relations.

Pl.'s Mem. at 9–10. Under New Jersey law, which the parties agree applies, to be tortious interference an act must be done maliciously. "The term 'malicious' in this context is not used in the literal sense, meaning ill-will toward the plaintiff. Rather, it means that 'the harm done was inflicted intentionally and without justification or excuse.' " *Ideal Dairy Farms, Inc. v. Farmland Dairy Farms, Inc.*, 282 N.J.Super. 140, 659 A.2d 904, 932–33 (N.J.Super.Ct.App.Div.1995) (quoting *Printing Mart–Morristown v. Sharp*, 116 N.J. 739, 751, 563 A.2d 31, 39 (1989)). Pursuit of business interest provides a justification which, absent wrongful means, is considered a competitor's privilege, even if it suppresses competition. *E Z Sockets, Inc. v. Brighton–Best Socket Screw Mfg., Inc.*, 307 N.J.Super. 546, 560, 704 A.2d 1364, 1370–1 (N.J.Super.Ct.1996).

■ Kentile's argument rests on analogy to the antitrust law's prohibition of tie-in sales. Pl.'s Mem. at 19–20. However, tie-in sales are not *per se* violations unless the defendant has "appreciable market power in the tying market." *Brokerage Concepts, Inc. v. U.S. Healthcare, Inc.*, 140 F.3d 494, 511 (3rd Cir.1998). Here there is no allegation that Congoleum has such "appreciable market power."

■ Tying arrangements violate the rule of reason if they unreasonably restrain competition in the tied market. *Id.* Kentile, however, makes no claim that Congoleum's behavior affected the allegedly-tied market generally.

■ The issue therefore turns entirely on the common law of New Jersey. Under that law, a competitor cannot recover for loss of business as an incident of competition absent interference with some superior contract or other right. "[W]hen a plaintiff's loss of business is a mere 'incident of competition,' it is *'damnum absque injuria,* unless some superior right by contract or otherwise is interfered with.' " *Printing Mart–Morristown,* 116 N.J. 739, 751, 563 A.2d 31, 41 (quoting *Sustick v. Slatina,* 48 N.J.Super. 134, 143, 137 A.2d 54, 59 (N.J.Super.Ct.App.Div.1957)). Since this case involves only contracts ter-

minable at will, plaintiff has no superior right to its dealers' fealty.

■ Under New Jersey law, competition justifies such means as Congoleum used to induce the distributors to deal with it, rather than with Kentile. When a restraint of trade is neither intrinsically unlawful, nor violative of any other law under the circumstances, it must be shown to be wrongful (e.g., violent, fraudulent, deceitful, or threatening) in order to amount to tortious interference. *See E Z Sockets* at 1370–71. The "tying" means used by Congoleum, without a showing of market power or interference with a superior contract or other right of Kentile's, did not constitute such tortious interference.

### Conclusion

While Congoleum's motion must be examined in the light most favorable to the opposing party, *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970), that party must produce "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (citation omitted).

There is no evidence sufficient to sustain a verdict for Kentile on either the issue of misuse of information or on that of interference with prospective business relationships.

Congoleum's motion for summary judgment is granted. The Clerk will enter judgment dismissing the complaint, with costs and disbursements to Congoleum.

So ordered.